## City of Bunker Hill

### v.

## Ashway Pearson.

*Municipal Corporations—Negligence of—Action for Personal Injury Received through Fall on Sidewalk—Alleged Defect in Sidewalk—Degree of Care Required of City—Of Plaintiff—Circumstances Affecting.*

1. In an action against a city to recover damages for an injury received by plaintiff from a fall upon a sidewalk, alleged to have been caused by the negligence of defendant in caring for the same, an instruction that if the plaintiff had frequently used and passed over the crossing before the injury and by using reasonable prudence could have avoided the fall she would not be entitled to recover, was properly refused.

2. An instruction that if the crossing was on a street at a remote part of the city and but little used, then less care would be required of the defendant in keeping it in good repair, was properly refused. Ordinary care is required in all cases, but the facts stated might be considered by the jury in determining whether that degree of care was exercised by the city.

3. An instruction that if the crossing was necessarily more dangerous than the ordinary sidewalks and crossings, and if plaintiff knew or ought to have known that fact, then the law required her to use more than ordinary care to avoid injury, was properly refused.

[Opinion filed April 11, 1892.]

Appeal from the Circuit Court of Macoupin County; the Hon. J. A. Creighton, Judge, presiding.

Messrs. C. A. WALKER, CHARLES S. RICHARDS and E. W. HAYES, for appellant.

Messrs. L. P. PEEBLES, A. N. YANCEY and THOMAS RINAKER, for appellee.

MR. JUSTICE PLEASANTS. Appellee recovered judgment on a verdict for $1,250 damages for personal injury by a fall on a street of appellant, on November 22, 1890. She was then fifty-seven years of age, but in ordinarily good condition physically, making her living as a laundress, and claimed that by the fall, besides other injuries received, her right arm was permanently paralyzed and rendered useless for work. The place was a crossing laid over a drain or gutter some fourteen inches in depth at the intersection of two streets, and made of three two-inch pine boards which were unsupported for a distance of seven feet or more—the support formerly under it having been washed out some weeks before. It was claimed that the middle board, by reason of a crack therein or some other weakness and for want of proper support, would sag under the weight of a person stepping upon it, at and near the middle of the span, but spring back suddenly when the weight was removed; that it so sagged under plaintiff, and by the return spring caught her foot between it and the outer board as she stepped with the other upon the latter—causing her to fall on her face and right side.

A large amount of evidence was introduced by each side touching the questions of fact involved—the existence, character and extent of the alleged defect in the walk, the notice thereof to the city authorities, both actual and constructive, the care or negligence of the respective parties, and the injury and damage to the plaintiff—upon most of which there was more or less of conflict. Besides the claim that the verdict was against the evidence, it is urged that the court erred in refusing to allow an alderman who was shown to have had quite a large experience in the use of pine boards for various purposes to state whether in his opinion " a pine plank of that description or character would

be likely to spring fourteen inches down," and in the matter of instructions. All of the witnesses as to the sagging stated the extent of it according to their best judgment from actual observation, and only one put it at fourteen inches—the depth of the gutter. The question excluded called for a categorical answer. Had the witnesses answered negatively it would have amounted to nothing, since a sagging of thirteen inches or less would have served the plaintiff's purpose quite as well. The ruling, therefore, if erroneous, deprived the defendant of no material advantage. But we think the subject was not a proper one for such testimony, and the ruling was right. Seven instructions were given for plaintiff, in neither of which does the argument suggest a fault. Eleven were given for defendant precisely as asked; three others, with modifications that are not complained of, and eight others, set out in the abstract by themselves and numbered respectively from 1 to 8, were refused. Counsel say, generally, that this refusal, as to all, was error, but call attention particularly only to the first, third, fourth, fifth and eighth.

The first affirms that if plaintiff had frequently used and passed over the crossing before the injury, and by using reasonable prudence could have avoided the fall, she would not be entitled to recover. This instruction is often asked and sometimes given in cases of this kind, but improperly, in our opinion. She could have avoided the fall by avoiding the crossing or by walking only on the outer plank, and though either course might have been reasonably prudent, it would not certainly follow that in what she actually did she did not use ordinary care, which was the question before the jury. The third declares that if the crossing was on "a street at a remote part of the city and but little used by the general public, then the law would not require of the city authorities that degree of care and diligence in the keeping of the same in good repair as it does to keep the more public and frequently used streets and crossings in repair." We understand that the law requires ordinary care as to all the streets and crossings, though how much care will amount

to that degree must depend upon the circumstances, and is a question for the jury. Had the instruction stated that the circumstances mentioned were proper to be considered by the jury in determining whether the city authorities had used ordinary care in reference to this crossing, it should have been given; but as asked, was rightly refused. A like error appears in the fourth, as to the degree of care required of plaintiff. It holds that if this crossing "was necessarily more dangerous than the ordinary sidewalks and crossings," and she knew or ought to have known it, "then the law requires her to use more than ordinary prudence to avoid injury, and if she failed to do so, she can not recover in this case." The law may have required of her more care than it would if she did not know the unusual danger, but no more than ordinary care in either—which was defined in another instruction that was given (the second of defendant's modified) as "that degree of care and caution which might reasonably be expected from an ordinarily prudent and cautious person *under the circumstances surrounding the plaintiff at the time of the alleged injury.*" Her knowledge of the unusual danger was among those circumstances, and had a legal operation and effect like that of the remoteness of the street mentioned in the refused instruction last above considered, but no more or other.

The fifth opened with the statement that the jury were "not at liberty to render a verdict for the plaintiff in this case because she is a woman, or on account of her age, or because she met with an accident in passing over a crossing that belonged to the defendant." This is certainly sound law; but we are unwilling to be understood as assuming that the withholding of its statement from the jury could by possibility have prejudiced the case of the defendant, and rather think that the giving of it might have prejudiced both the court and the defendant. What followed it had been fully and clearly given in instructions for each party. The eighth also contained nothing more.

Finding no material error in the record of the rulings and that the verdict was sufficiently supported by the evidence, the judgment will be affirmed.　　*Judgment affirmed.*